IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| M.J. WILLIAMS, | |
| PLAINTIFF, | INDEX NO. 2017-cv-1873 (KBF) |
| | ECF CASE |
| vs. | |
| THE CITY OF NEW YORK, a municipal entity, NYPD INSPECTOR DAVID EHRENBERG, NYPD OFFICER FRANK ESSIG, and NYPD OFFICERS "JOHN DOES" 1-8, | AMENDED COMPLAINT [JURY TRIAL DEMANDED] |
| DEFENDANTS. | |

_____

Plaintiff M.J. WILLIAMS, by her attorneys, STECKLOW & THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights, and pursuant to state law.

2. Plaintiff M.J. Williams is a fifty-one year-old woman, who is a practicing attorney admitted by the State of New York. Ms. Williams believes in the power of peaceable assembly to affect political and social change. Acting on this belief, she began participating in protests, primarily concerning police brutality of racial minorities and lack of police accountability therefor, following the non-indictment in early December 2014 of NYPD Officer Daniel Pantaleo for the chokehold death of Eric Garner. In addition to participating in these protests, Ms. Williams provided general advice and

1

support, based on her legal experience, to other participants in these protests that seek to end to police brutality.

3. Ms. Williams participated in and supported the "People's Monday" protests, which are held weekly to bring attention to black, brown and indigenous individuals unjustly killed by police.

4. On December 14, 2015, Ms. Williams joined the "People's Monday" protest dedicated to Laquan McDonald, a black teenaged boy, who was killed by members of the Chicago Police Department after they shot him 16 times as he walked away from the officers.

5. During the protest, Ms. Williams was standing a sidewalk when Defendant POLICE INSPECTOR DAVID EHRENBERG grabbed her throat and pushed her with significant force so that she landed on her back onto the sidewalk. Defendant POLICE INSPECTOR EHRENBERG then, turned Plaintiff's body over and, together with Defendant POLICE OFFICER FRANK ESSIG, pushed her again with such force that her face bounced twice on the pavement. Defendant POLICE INSPECTOR DAVID EHRENBERG and Defendant POLICE OFFICER ESSIG, then handcuffed Plaintiff, placing her under arrest.

6. As a result of this arrest, Ms. Williams suffered severe injuries to her back including displacement of vertebrae and sciatica nerve pain, which continues to today, and to her face, including a cut, which has left a permanent scar, and bruising for weeks following the arrest.

7. These injuries further required that Ms. Williams seek medical treatment, including emergency room treatment for the cut on her face and epidural steroid

injections to address the back and nerve pain, which has led Plaintiff to incur thousands of dollars of out-of-pocket medical expenses.

8. Ms. Williams was at all times during the protest lawfully exercising her First Amendment-protected rights to free speech and assembly. Nonetheless, the individual defendants violently arrested, detained, and charged Ms. Williams with a crime that she did not commit. The New York County District Attorney's Office declined to prosecute the charge against Ms. Williams.

## II. JURISDICTION

9. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First and Fourth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4).

10. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims.

11. This action is furthermore timely commenced pursuant to New York General Municipal Law § 50-i(1)(c), following service of a notice of claim in compliance with General Municipal Law § 50-e upon Defendant THE CITY OF NEW YORK, after which more than thirty (30) days elapsed and Defendant THE CITY OF NEW YORK neglected or refused to make an adjustment or payment therefor.

## III. VENUE

12. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) because the claims arose in this district.

## IV. JURY DEMAND

13. Plaintiff M.J. WILLIAMS respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

14. Plaintiff M.J. WILLIAMS (the "Plaintiff") is a resident of the State of New York and the County of Kings.

15. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16. Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

17. At all times Defendant POLICE INSPECTOR DAVID EHRENBERG ("Defendant EHRENBERG") was a duly sworn police deputy inspector of the NYPD and was acting under the supervision of said department and according to his official duties. On information and belief, after the facts alleged herein, said defendant was promoted from Deputy Inspector rank to Inspector. Plaintiff sues Defendant POLICE INSPECTOR EHRENBERG in both his official and individual capacities.

18. At all times Defendant POLICE OFFICER FRANK ESSIG ("Defendant ESSIG") was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to their official duties.

4

19. At all times Defendant POLICE OFFICER "John Doe" 1 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to their official duties.

20. At all times Defendant POLICE OFFICER "John Doe" 2 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to their official duties.

21. At all times Defendant POLICE OFFICER "John Doe" 3 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to their official duties.

22. At all times Defendant POLICE OFFICER "John Doe" 4 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to their official duties.

23. At all times hereinafter mentioned, the Defendant Police Officers "John Does 5-8" (referred to collectively along with the individually-named defendants as the "Defendant POLICE OFFICERS") were duly sworn police officers of the New York City Police Department and were acting under the supervision of said department and according to their official duties.

24. Plaintiff M.J. WILLIAMS sues each of the Defendant POLICE OFFICERS "John Does 1-8" in both their official and individual capacities and will amend this complaint to identify each of the "John Doe" police officers by their true names, as their identities can be established to a reasonable certainty.

25. At all times relevant to this action, the Defendant POLICE OFFICERS either personally or through their employees, were acting under color of state law and/or

pursuant to the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

26. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

27. In late 2014, highly publicized non-indictments of police officers who killed Michael Brown, in Ferguson, Missouri, and Eric Garner, in Staten Island, New York sparked large protests and widespread attention on the lack of accountability in the U.S. justice system for police who kill and brutalize racial minorities. That year, a national movement formed, and swelled after the aforementioned non-indictments, under the #BlackLivesMatter slogan. Protests and political groups that organized within the #BlackLivesMatter movement seek, among other things, to address racial injustice, in particular, by halting police brutality against racial minorities.

28. The #BlackLivesMatter movement seeks to stem unwarranted violence that disproportionately attends police interactions with Black, Latino, and indigenous communities, and the cycle of fear and mistrust between law enforcement and these communities engendered by this violence.

29. Those participating in the national #BlackLivesMatter movement share the belief that such change can be achieved, among other means, through street protests and other forms of direct political action.

30. In New York, protests against police brutality called "People's Monday" first began in December 2014. By early February 2015, these protests began focusing on

one individual each week and involved reciting facts printed on large-scale signs about each individual and his or her death at the hands of the police. The objectives of the "People's Monday" protests, which continue to today, include spreading awareness of police violence, particularly to individuals who are not regularly exposed to that violence, and building political and social change to bring about greater police accountability and racial justice.

31. Plaintiff participated in "People's Monday" protests.

32. Plaintiff, by virtue of her status as a lawyer, offered general advice and support to other participants in "People's Monday" protests.

33. On December 14, 2015, Plaintiff joined the "People's Monday" protest dedicated to Laquan McDonald, a black teenaged boy, who was killed by members of the Chicago Police Department after they shot him 16 times as he walked away from the officers.

34. At or around 7 pm, the protest began at Grand Central Terminal, where the protesters first recited facts about the Laquan McDonald case to the public in the building's main concourse.

35. The protest exited Grand Central Terminal, and marched to various locations where the protesters again shared the facts about the police killing of Laquan McDonald.

36. Shortly before 8:00 p.m., at or around Fifth Avenue and 50th Street in Manhattan, Defendant EHRENBERG and police units, upon information and belief, under his direction, arrived to police the "People's Monday" protest.

37. Defendant EHRENBERG knew Ms. Williams from his policing of previous "People's Monday" protests, in which she had participated.

38. The evening of December 14, 2015, Defendant EHRENBERG appeared angry, specifically with Ms. Williams for her participation in the protest.

39. Shortly after Defendant EHRENBERG arrived to police the protest, he stood in the street and began shouting orders to the protesters to get out of the street and onto the sidewalk.

40. At the time that Defendant EHRENBERG gave these orders, all of the participants in the protest were either standing on the sidewalk or were lawfully using a pedestrian crosswalk with the signal.

41. Directly after he gave that order, Ms. Williams asked Defendant EHRENBERG why he was giving this directive when no-one was unlawfully in the street.

42. Approximately twenty minutes later, at or around 8:15 p.m., Ms. Williams was standing on the sidewalk on 50th Street, midway between Fifth and Sixth Avenues, still participating in the "People's Monday" protest.

43. At that approximate place and time, Ms. Williams felt Defendant EHRENBERG's hand on her throat and instinctively reacted by shouting "Get your hands off my fucking throat," as Defendant EHRENBERG pushed her with significant force onto the sidewalk, so that she landed on her lower back and her head nearly touched the ground. Ms. Williams screamed in pain and fear when she hit the ground.

44. Then, Defendant EHRENBERG pulled and turned Ms. Williams's body over and, with the assistance of Defendant ESSIG, slammed Ms. Williams forward onto the ground with so much force that her face bounced twice on the pavement. Defendant

EHRENBERG, together with Defendant ESSIG, next handcuffed Plaintiff, placing her under arrest.

45. As Defendant EHRENBERG violently arrested Ms. Williams, he shouted at her: "I'm not fucking around with you today, do you understand me?!".

46. This was the first time Ms. Williams had ever been arrested.

47. Ms. Williams was stunned when she first hit the ground and was confused as to why Defendant EHRENBERG had assaulted her, but Ms. Williams did not resist or otherwise struggle while being arrested.

48. Ms. Williams's face was cut from the impact on the pavement and began to bleed immediately and visibly.

49. Ms. Williams was not offered medical treatment until she was in custody at the Midtown North precinct. There an emergency medical technician provided her with nominal treatment for the laceration on her face. No other medical treatment was offered to Ms. Williams while she was in NYPD custody.

50. Fingerprints and photographs were taken of Ms. Williams by NYPD police officers at the Midtown North precinct.

51. On information and belief, a NYPD Internal Affairs Bureau officer also photographed Ms. Williams's face while she was in NYPD custody.

52. Ms. Williams was held in NYPD custody, visibly injured from the violent arrest, for at least three hours.

53. Ms. Williams was issued a Desk Appearance Ticket for Obstructing Governmental Administration, even though she had not committed said offense.

54. Ms. Williams was required to appear at court on or about January 22, 2015 to answer the charge made against her.

55. At a later date, the New York County District Attorney's Office declined to prosecute the charge against Plaintiff, and the charge was thus dismissed.

56. On December 14, 2015, upon her release from Midtown North precinct, Ms. Williams immediately sought emergency medical treatment at a hospital for the cut to her face.

57. Ms. Williams' face was visibly bruised for weeks following the arrest and is permanently scarred.

58. Within days after the arrest, Ms. Williams was forced to seek medical care for additional injuries she suffered as a result of the arrest to her knee, foot, and back.

59. Ms. Williams suffered severe back injuries as a result of the arrest, including displacement of vertebrae and sciatica nerve pain, and these injuries cause Ms. Williams to suffer significant pain to today.

60. The requisite medical treatment for these injuries, including the emergency room treatment for the cut on her face and epidural steroid injections to address the back and nerve pain, has caused Plaintiff to incur thousands of dollars of out-of-pocket medical expenses to date.

61. While Ms. Williams was in NYPD custody after the arrest, but before she was transported to the Midtown North precinct, Defendant POLICE OFFICER "John Doe" 1 took Ms. Williams's mobile phone from her jacket pocket without her consent and Defendant POLICE OFFICERS "John Does" 1-4 had custody of Plaintiff's mobile

phone. Shortly before she was transported to the precinct, a Defendant POLICE OFFICER "John Doe" 2 returned Ms. Williams's mobile phone to her bag.

62. Hours later, when Plaintiff was still in NYPD custody at the Midtown North precinct, Defendant POLICE OFFICER ESSIG gave Plaintiff access to her mobile phone to call her lawyer. Plaintiff's mobile phone appeared to have been tampered with while it was in NYPD custody because she did not need to use either her passcode nor Touch ID fingerprint in order to use the mobile phone to place the call to her lawyer, even though Ms. Williams's mobile phone was passcode protected.

63. As a result of the above impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, loss of liberty, emotional distress, damage to property, out-of-pocket expenses, and other special damages.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

64. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

65. All of the aforementioned acts of the Defendant THE CITY OF NEW YORK, Defendant EHRENBERG, Defendant ESSIG, and "John Doe" POLICE OFFICERS and their agents, servants and employees ("Defendants"), were carried out under the color of state law.

66. All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a. To be free from seizure and arrest not based upon probable cause;

    b. To freedom from being subjected to false criminal charges by the police;

c. To freedom from excessive force being used upon her;

d. To freedom from abuse of process;

e. To freedom from unwarranted search and seizure; and

f. To freedom of speech and expression.

67. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

68. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers under the color of state law, with all of the actual and/or apparent authority attendant thereto.

69. As a result of the Defendant POLICE OFFICERS' impermissible conduct, the Plaintiff suffered damages as alleged and demands judgment against the Defendants in an amount to be determined at trial, along with punitive damages, together with attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**FALSE ARREST UNDER 42 U.S.C. § 1983**

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

71. Plaintiff was arrested by the Defendant POLICE OFFICERS without probable cause, without a warrant, and without Plaintiff's consent.

72. In particular, the Defendant POLICE OFFICERS, including Defendants EHRENBERG and ESSIG, seized Plaintiff.

73. The Defendant POLICE OFFICERS unlawfully detained Plaintiff in their custody for approximately three (3) hours on December 14, 2015.

74. On or about January 22, 2015, Ms. Williams was required to appear at court to answer the charge made against her.

75. At a later date, the New York County District Attorneys Office declined to prosecute the charge against Plaintiff, and the charge was thus dismissed.

76. As a result of the Defendant POLICE OFFICERS' impermissible conduct, the Plaintiff suffered damages as alleged and demands judgment against the Defendant POLICE OFFICERS in an amount to be determined at trial, along with punitive damages, together with attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**

77. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

78. Plaintiff was subjected to excessive and unjustified force in violation of her rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 by the Defendant POLICE OFFICERS.

79. In particular, Defendant POLICE OFFICERS, including Defendants EHRENBERG and ESSIG, used excessive force in grabbing Plaintiff by her throat, throwing, shoving, and/or pushing her so as to cause injuries to her foot, knee, back, and face.

80. In particular, Defendant EHRENBERG, who was familiar with Ms. Williams and had had a verbal exchange with her shortly before the arrest, expressed anger and malice towards Ms. Williams, yelling "I'm not fucking around with you today,

do you understand me?!" while he maliciously arrested Ms. Williams with such force as to cause her injuries.

81. Defendant EHRENBERG's unjustified and excessive use of force during the arrest caused Ms. Williams painful injuries to her back that persist to today.

82. Defendants EHRENBERG and ESSIG unjustified use of force during the arrest caused Ms. Williams's face to bleed, to bruise for weeks, and to be permanently scarred.

83. At no point did the circumstances presented to the Defendant POLICE OFFICERS support any of the above-mentioned applications of force on Plaintiff.

84. As a result of the Defendant POLICE OFFICERS' impermissible and violent conduct, the Plaintiff suffered damages as alleged and demands judgment against the Defendant POLICE OFFICERS in an amount to be determined at trial, along with punitive damages, together with attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION**
**UNDER 42 U.S.C. § 1983**

85. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

86. On December 14, 2015, the Defendant POLICE OFFICERS arrested Plaintiff in order to retaliate against her for participating in the "People's Monday" protest.

87. Plaintiff was not engaged in any illegal activity of any kind or sort when the Defendant POLICE OFFICERS arrested her.

88. The Defendant POLICE OFFICERS utilized excessive force against

Plaintiff in order to retaliate against her for lawfully exercising her First Amendment protected rights to free speech, expression, and assembly.

89. The actions of the Defendant POLICE OFFICERS heretofore described, were designed to and did cause bodily harm, pain and suffering in direct retaliation for Plaintiff's exercise of her civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution, as well as the Constitution of the State of New York.

90. As a result of the foregoing, demands judgment against Defendant POLICE OFFICERS in an amount to be determined at trial, along with punitive damages, together with attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**STATE LAW – BATTERY AGAINST DEFENDANTS**
**POLICE INSPECTOR EHRENBERG AND POLICE OFFICER ESSIG**

91. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

92. Defendants EHRENBERG and ESSIG committed battery upon Plaintiff in their act of making bodily contact with Plaintiff by subjecting her to excessive force in the manner described herein.

93. Defendants EHRENBERG and ESSIG performed these acts of making bodily contact with Plaintiff with the intent to do so.

94. Defendants EHRENBERG's and ESSIG's acts of making bodily contact with Plaintiff were subjectively offensive in nature to Plaintiff.

95. Defendants EHRENBERG's and ESSIG's acts of making bodily contact with Plaintiff would be objectively offensive in nature to a reasonable person aware of the circumstances of the Defendant POLICE OFFICERS' interaction with Plaintiff.

96. Defendants EHRENBERG and ESSIG performed these acts of making bodily contact with Plaintiff without privilege or consent from Plaintiff.

97. As a result of the foregoing, Plaintiff suffered damages as alleged and is entitled to compensatory damages and punitive damages against Defendants EHRENBERG and ESSIG in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**STATE LAW – ASSAULT AGAINST DEFENDANTS**
**POLICE INSPECTOR EHRENBERG AND POLICE OFFICER ESSIG**

98. Plaintiff repeats, reiterate, and re-alleges each and every allegation contained in the above paragraphs.

99. Defendants EHRENBERG and ESSIG assaulted Plaintiff by putting her in apprehension of imminent harmful and offensive bodily contact.

100. Defendants EHRENBERG's and ESSIG's act of threatening the use of physical force against Plaintiff put Plaintiff in an apprehension of a battery from Defendant EHRENBERG, Defendant ESSIG, and the Defendant POLICE OFFICERS.

101. Defendants EHRENBERG's and ESSIG's act of threatening the use of force against Plaintiff would put a reasonable person aware of the circumstances of the incident in question in an apprehension of a battery from Defendant EHRENBERG, Defendant ESSIG, and the Defendant POLICE OFFICERS.

102. As a result of the foregoing, Plaintiff suffered damages as alleged and is entitled to compensatory damages and punitive damages against Defendants EHRENBERG and ESSIG in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**STATE LAW – RESPONDEAT SUPERIOR**
**AGAINST DEFENDANT THE CITY OF NEW YORK**

103. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

104. The acts complained of were carried out by the aforementioned Defendant POLICE OFFICERS in their capacities as police officers, officials, and agents of Defendant THE CITY OF NEW YORK.

105. As a result Plaintiff sustained physical, mental, and emotional injuries in the manner described herein.

106. The acts complained of were carried out by the aforementioned Defendant POLICE OFFICERS in their capacities as police officers and officials in the course of their employment by Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

107. As a result, Defendant THE CITY OF NEW YORK is liable to Plaintiff for the injuries and other damages caused by its police officers, officials, and agents on a theory of *respondeat superior*.

108. As a result of Defendants' impermissible conduct, Plaintiff suffered damages as alleged and demands judgment against Defendant THE CITY OF NEW YORK in an amount to be determined at trial, along with punitive damages, together with attorneys' fees and costs.

# EIGHTH CLAIM FOR RELIEF
## STATE LAW – TRESPASS TO CHATTELS
## AGAINST THE DEFENDANT POLICE OFFICERS

109. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs.

110. The Defendant POLICE OFFICERS "JOHN DOES" 1-4 intentionally seized, without justification or consent, Plaintiff's mobile telephone device.

111. Upon information and belief, the Defendant POLICE OFFICERS "JOHN DOES" 1-4 intentionally interfered with the functioning of Plaintiff's mobile telephone device by circumventing the device's password-protection, accessing data on the device without Plaintiff's authorization, and/or tampering with the device's functionality.

112. The foregoing acts of Defendant POLICE OFFICERS "JOHN DOES" 1-4 harmed Plaintiff because, upon information and belief, the Defendant POLICE OFFICERS "JOHN DOES" 1-4 altered the functionality of Plaintiff's mobile telephone device and obtained access to confidential and privileged data belonging to Plaintiff or entrusted to Plaintiff's care.

113. As a result of Defendants' impermissible conduct, Plaintiff suffered damages as alleged and demands judgment against Defendant POLICE OFFICERS "JOHN DOES" 1-4 in an amount to be determined at trial, along with punitive damages, together with attorneys' fees and costs.

# NINTH CLAIM FOR RELIEF
# PUNITIVE DAMAGES
# AGAINST THE DEFENDANT POLICE OFFICERS

114. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

115. The actions of the Defendant POLICE OFFICERS constituted intentional violations of federal and state law.

116. The actions of the Defendant POLICE OFFICERS were motivated by evil motive or intent, or involved involves reckless or callous indifference to the constitutionally protected rights of Plaintiff.

117. As a result, Plaintiff is entitled to an award of punitive damages against each of the individual Defendant POLICE OFFICERS in an amount to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorneys' fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
June 13, 2017

Respectfully submitted,

David A. Thompson [DT 3991]
STECKLOW & THOMPSON
217 Centre Street, 6th Floor
New York, New York 10013
[212] 566-8000
dthompson@sctlaw.com

*Attorneys for Plaintiff*